**BERRY, Insurance Com'r of Michigan, v. KAVANAGH, Collector of Internal Revenue.**

No. 9440.

Circuit Court of Appeals, Sixth Circuit.

Aug. 31, 1943.

Clayton F. Jennings, of Lansing, Mich. (Clayton F. Jennings and Shields, Ballard, Jennings & Taber, all of Lansing, Mich., on the brief), for appellant.

F. G. Rita, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Geo. H. Zeutzius, all of Washington, D. C., and John C. Lehr and Arnold W. Lungerhausen, both of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

The question presented is whether or not deeds executed to a reinsurer by a statutory receiver of a reserve life insurance company in liquidation are subject to a transfer tax under Sections 3480 and 3482 of the Internal Revenue Code. The trial court decided in the affirmative.

Section 3480 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3480, provides in substance that a tax shall be levied and collected in respect of the several bonds and other documents men-

tioned and described in Section 3482, 26 U.S.C.A. Int.Rev.Code, § 3482. The latter section provides in effect that deeds, instruments or writings delivered by July 1, 1945, whereby any lands, tenements or other realty sold shall be granted, assigned, transferred or otherwise conveyed to or vested in a purchaser shall be subject to a transfer tax measured by the consideration paid or agreed to be paid.

The American Life Insurance Company, a Michigan corporation engaged in the reserve life insurance business, because of insolvency was dissolved on September 16, 1939, pursuant to the statutes of Michigan. Under Section 12266 of the Compiled Laws of that State, the title to all assets of the insolvent company vested in its receiver. The property included various parcels of real estate appraised at $1,962,324.55.

Under the judgment and orders of the Circuit Court for Ingham County, the receiver on November 17, 1939, entered into a written agreement with the American United Life Insurance Company of Indianapolis, Indiana, whereby the latter agreed to reinsure and assume all valid outstanding policy obligations and liabilities of the dissolved company in force on April 12, 1938. The receiver was required to convey all of the assets of the insolvent company to the reinsuring company with the exception of cash sufficient to pay receivership expenses, general creditors and dissenting policyholders. The policies assumed had impressed on them a lien equal to seventy-five percent of their net equity, excluding death claims occurring within ten years after the date of the contract and for the succeeding five years any portion of the unpaid liens attached to maturing policies. The assets conveyed to the reinsurer were segregated and the reinsurer's liability was limited to the sum realized from their sale or exchange including premiums received from continuing policyholders.

The court appointed a trustee whose approval was required of all transactions by the reinsurer affecting the real estate, securities or other assets of the old company but his approval was presumed if he failed for ten business days to act on any request of the reinsurer. The trustee was required to report to the court all of the reinsurer's transactions relating to the assets and in the event of a controversy between the trustee and the reinsurer relating thereto the court was to adjudicate their differences and the court retained jurisdiction of the cause for that and other purposes.

At the end of fifteen years, or earlier if all policy liens had been completely discharged, the policies then in force were to become the direct obligation of the reinsurer and such policyholders were to have the same rights and be subject to the same liabilities as other policyholders of the reinsurer. At that time the remaining segregated assets of the old company became the property of the reinsurer if the court, in the interim, had entered no contrary order. From the date of the contract until the remaining assets vested in the reinsurer, it was to receive annually for its services $1.50 per thousand of the mean amount of premiums paid by the persistent policyholders and $1.00 per thousand of the mean amount of business in force under the paid-up or extended insurance.

Between August 26, 1940, and May 30, 1941, the receiver, under orders of the court, executed and delivered to the reinsurer 28 separate quit-claim deeds conveying certain parcels of real estate which were part of the policyholders' reserves of the reinsured company. Each of the deeds recited that the grantor bargained and sold and forever quit-claimed unto the grantee, its successor and assigns, the described real estate, with a reddendum clause in the following language: "The said above-described premises are conveyed to second party for the purpose of granting unto the second party full legal title thereto for the purpose of the management, conservation, liquidation and sale of said premises for the benefit of the policyholders of the American Life Insurance Company, and not for the purpose of sale of said premises within the meaning of Schedule A-8 of Title VIII of the Federal Revenue Act of 1926, as added by Section 725 of the Federal Revenue Act of 1932."

No tax stamps were affixed to the deeds but on demand of appellee Collector of Internal Revenue, appellant affixed $2,152.-23 on deeds conveying real estate in the County of Wayne, Michigan, and this sum he seeks to recover with interest in this action.

The tax provided in Section 3482 of the Internal Revenue Code is an excise upon the privilege of selling lands, tenements or other realty. The burden of the tax attaches when the property is sold. Usually the word "sold" means the transfer of title or an agreement to transfer subse-

quent for a consideration. Whether a taxable sale occurs depends upon the intention of the parties gathered from their whole writing when giving to the words and phrases used, their ordinary signification.

The intention of the parties in the present so-called reinsurance agreement and the deeds executed pursuant thereto seem to express a purpose to convey the naked legal title of the real estate in question to the grantee for the purpose of managing, conserving and liquidating the real estate for the benefit of the policyholders of the insolvent company.

The provisions of the instruments are consistent with the existence of the relationship of principal and agent, but are inconsistent with the relationship of vendor and vendee. We are of the opinion that the transaction was not a sale, but an agency agreement. The transfer of title or the agreement to transfer it for a price paid or a promise is the essence of a sale. If such a transfer puts the transferee in the position of an owner and makes him liable to the transferor as a debtor for an agreed price and not merely as an agent who must account for the proceeds of resale, the transaction is a sale. The essence of an agency to sell is the delivery to an agent not as his property but as the property of the principal who remains the owner and has the right to control sales, fix prices and terms, demand and receive the proceeds less the agent's commission upon sales made. Applying the correct rule to the transaction here in question, it has all the characteristics of an agency to sell. The reinsurer was not obligated to pay any fixed sum to the receiver or to the reinsured policyholders. Its obligation ceased when it distributed on maturing policies their premium accumulations and the proceeds of the sale of the assets. The sale of the assets had to be approved by the vendor and was also subject to the approval of the court. The reinsurer received fixed compensation for its services and it had to account to the court for the proceeds of the sale and premium accumulations. When the contract and deed here in question are properly construed as a whole, in our opinion there was created an agency to sell and not the relationship of vendor and vendee. The word "sold" in the absence of anything to the contrary, will be assumed to have its usual signification, but giving to the word the broader meaning

claimed for it by the appellee, the transaction here in question is not within the present taxing statute. If Congress had intended to levy a tax on every transfer of title it could have expressed its purpose in a sentence, but it is clear from the language of the section that it intended to confine the tax to actual sales. We attach no importance to the vesting of the real estate, if any, in the hands of the reinsurer when the liens on the policies are discharged or at the expiration of fifteen years.

The reinsurer has not as yet received the beneficial title to the real estate and may never acquire it. When that event occurs the tax due, if any, can then be levied. The residuary balance is now too uncertain for tax measurement.

In our opinion the trial court erred in sustaining appellee's motion to dismiss appellant's petition. Judgment reversed and cause remanded for further proceedings consistent with this opinion.