**BERKELEY SAVINGS AND LOAN AS-SOCIATION OF NEWARK, NEW JER-SEY, a banking corporation of New Jersey, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. 413–68.**

United States District Court
D. New Jersey,
Civil Division.

July 3, 1969.

Fast & Fast, by Mahlon Fast, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Thomas Alworth, Asst. U. S. Atty., Newark, N. J., for the Government; Johnnie M. Walters, Donald R. Anderson, Risden C. Ackerman, Dept. of Justice, Washington, D. C., of counsel, for respondent.

COOLAHAN, District Judge:

This is a suit for a refund of federal documentary stamp taxes, and interest thereon, which the plaintiff paid to the Commissioner of Internal Revenue under protest after the Commissioner determined that land transactions in which the plaintiff involved itself were of such a nature that federal documentary tax stamps should have been purchased and affixed to certain deeds conveying realty. Claim for refund having been made and disallowed, and the parties having entered into a stipulation as to the facts in this action, the matter is presently properly before the court on the parties' cross motions for summary judgment.

The alleged statutory basis for the defendant's assessment of plaintiff for the documentary stamp taxes is 26 U.S.C. § 4361 which provides:

There is hereby imposed, on each deed, instrument, or writing by which any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds $100, a tax at the rate of 55 cents for each $500 or fractional part thereof. * * *

Plaintiff contends that the land transactions in which it was involved, and which the Commissioner contends require imposition of the tax, do not in fact come within the ambit of section 4361. In addition, it contends that 26 U.S.C. § 4362 is applicable, and operates to remove the transactions from the Commissioner's grasp. Section 4362 provides that "the tax imposed by section 4361 shall not apply to any instrument or writing given to secure a debt. * * *" It becomes essential at this point to consider the nature of these transactions, as described by the parties in the stipulation into which they have entered.

The plaintiff's land transactions which the court has made reference to were dealings with the Veterans Administration (hereinafter referred to as the "VA"). As a result of its loan guarantee program, the VA acquired real property following default and foreclosure on G.I. loans. The VA then sought to sell the acquired property. In New Jersey, the property was sold by way of installment contracts to individual purchasers, none of which was the plaintiff. Under the terms of the installment contracts, the VA retained legal title to the realty until an individual purchaser's monthly payments had reduced the balance of the purchase price to a certain amount, at which time the purchaser would receive, upon demand, a warranty deed conveying title to the realty to him. Simultaneously therewith, the buyer would execute and deliver to the VA a bond and mortgage for the premises. If, before the purchaser acquired legal title to the property in the aforementioned manner, the purchaser should have defaulted in his obligations to the VA pursuant to the

installment contract, he would have lost all rights to and interest in the realty. Should the installment purchaser have defaulted subsequent to his acquisition of legal title to the property, the VA would have been relegated to its rights under the bond and mortgage executed by the purchaser on behalf of the VA.

The VA was not engaged in the business of banking. Desirous of liquidating the value of the property sold to the installment purchasers, and only with respect to properties as to which the purchasers had not as yet acquired legal title, the VA entered into transactions with certain persons, such as the plaintiff Savings and Loan Association, with regard to the installment contracts. In the course of these transactions, the plaintiff paid to the VA the sum of all payments remaining unpaid by the individual purchasers, and the VA, in turn, assigned to the plaintiff the installment contracts involved and conveyed legal title in the realty to the plaintiff through deeds of transfer. Possession and equitable title to the property remained in the installment purchasers. Among the terms involved in the assignments to the plaintiff of the installment contracts were certain guarantee provisions under VA Regulation 4600, according to which the plaintiff could, in the event of default in the installment obligations by an installment purchaser and prior to that purchaser's acquisition of legal title from plaintiff, return to the VA the installment contract and legal title to the property and obtain from the VA payment for all moneys due and owing from the purchaser. As a result of the protection afforded by Regulation 4600, the plaintiff could, in the event of a default by an installment purchaser which preceded that purchaser's acquisition of legal title from plaintiff, elect one of two options: 1) it could, pursuant to Regulation 4600, transfer the installment contract and legal title in the property back to the VA and receive payment from the VA for the money due and

owing to the plaintiff from the installment purchaser; 2) it could retain both the legal title and the installment contract involved, and proceed under its legal rights as established by those documents. In the event of default by the installment purchaser *after* plaintiff transferred legal title to the property to that purchaser, plaintiff's elective invocation of Regulation 4600 would take the form of a transfer of the contract and plaintiff's mortgage on the property to the VA in exchange for the VA's payment to plaintiff of the money still owing to plaintiff from the installment purchaser.

As has been adverted to earlier, the documentary stamp tax provision involved in the present case, 26 U.S.C. § 4361, calls for a tax on all deeds or other instruments by which lands or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser; 26 U.S.C. § 4362 provides that section 4361 shall not apply to any instrument given to secure a debt. The parties to this action are in agreement that documentary stamps need have been placed on the deeds to the property sold by the VA pursuant to the installment contracts at that point in time where the installment purchaser, having paid in the required amount to entitle him to take legal title to the property, did in fact take legal title thereto. This would apparently also be the rule when the plaintiff, having previously acquired legal title from the VA, transferred that title to an installment purchaser. Stamps were apparently affixed on these occasions. The sole question for consideration here is whether documentary stamps need additionally have been affixed to the deeds given by the VA to plaintiff, which deeds did in fact convey naked legal title in the property to the plaintiff. Defendant contends that the conveyances of legal title by the VA to the plaintiff constitute transactions within the contemplation of section 4361. Plaintiff contends that a conveyance of naked legal title does

not automatically operate to bring a transaction within the ambit of section 4361; instead, it urges that what is essential, according to both the language of section 4361 and the limited case law relating to that section, is the purpose of the transaction, and that in the present case the purpose of the conveyances of legal title was not to ultimately vest dominion over the property in the plaintiff, but was instead to provide plaintiff with security for its installment contract rights. Plaintiff additionally points to the provisions of section 4362, which excludes from the operation of section 4361 "any instrument or writing given to secure a debt. * * * " It is the conclusion of the court that documentary stamps need not have been affixed to the deeds from the VA to the plaintiff, and a verdict in this matter will be rendered in favor of the plaintiff.

In the court's view, the bare language of sections 4361 and 4362 goes against the Government's position. Firstly, section 4361 imposes the tax on "each deed, instrument, or writing by which any lands, tenements, or other realty *sold* shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers * * * ." (Emphasis added.) From the language of that section it is clear that not all deeds, instruments, or writing conveying land or other realty are to have stamps affixed to them; only those deeds, instruments, or writings conveying land or other realty *sold* need have stamps affixed. Necessary, then, is an examination of the transaction being considered to see if there is a sale of realty; whether or not there is a sale depends, in the court's view, on whether or not the transfer of title was for consideration, and on the intention of the parties and the purpose for which the "purchasing" party desires the property. In the context of the present case, the court must conclude that in essence the plaintiff-VA transactions were not sales of realty; the plaintiff is not in the business of purchasing realty outright, and is in fact prohibited from doing so by New Jersey law,[1] and its acquisitions of the legal title to the property were merely incidental to its primary purpose in the transactions, which was to discount the installment purchasers' obligations to the VA. That this is the case is further indicated by the fact that the VA remained liable to the plaintiff even after legal title and the installment contracts passed to the plaintiff, by virtue of VA Regulation 4600. That regulation, which, it will be recalled, permitted the plaintiff to return the legal title and installment contract to the VA in the event of default by the installment purchaser, is most interestingly designated as applying to "Sale of Loans, Guarantee of Payment." Although it is clear that the VA in the present case did not sell to plaintiff any "loans," the fact that a regulation applicable to sale of loans should be deemed by the VA and plaintiff to be applicable to the VA's sale to plaintiff of its installment contract and legal title is most reflective of the intent of the contracting parties that the transfers of legal title from the VA to the plaintiff were for the purpose of security, and not for the purpose of sale. Furthermore, there is considerable doubt in the court's mind as to whether or not there was any consideration given to the VA for its transfers of title to the plaintiff. It will be recalled that both the legal title and the installment contract were transferred at the same time; both instruments recited that the transfer was for ten dollars and *other* valuable consideration. In the court's view, it is just as likely, considering the total content of the transactions, that the total sum of money paid by plaintiff to the VA was for the contracts rather than

---

1. See N.J.S. 17:12B–166, N.J.S.A. which provides for two types of real estate investments which savings and loan institutions may engage in, neither of which includes investments—whether they be long or short term—for resale to the general public.

for the legal title to the property. Realistically speaking, the plaintiff was just as interested in obtaining the contract assignments as it was in obtaining the property; the court cannot conclude that the money paid by plaintiff to the VA need necessarily be held to have been paid for the transfers of legal title to the property.

Alternatively, even should the language of section 4361 not be deemed to compel a conclusion that documentary stamps need not have been affixed to the VA-plaintiff deeds, the language of section 4362 should settle the issue. Section 4362 provides that "the tax imposed by section 4361 shall not apply to any instrument or writing given to secure a debt." The reference in section 4362 to section 4361 makes clear that "instruments or writings" within the purview of section 4362 necessarily include deeds and other instruments mentioned in section 4361; this being clear, it quickly and once again becomes evident that not all deeds need have documentary stamps affixed, but that, instead, only those deeds not given to secure a debt—*i. e.*, deeds given for "sale"—need stamps. The court would once again repeat that in essence the typical VA-plaintiff transaction was not a sale of land, but that, instead, the transfer of legal title to the plaintiff was for the purpose of securing the debt of the installment purchaser to the plaintiff. This being the case, section 4362, like section 4361 before it, operates to prevent taxation of the VA-plaintiff transactions involved in the present case.

■ Case law concerning section 4361 supports the court's position. Although there are apparently no reported cases analyzing section 4361 with respect to transactions of the same type as those involved in this case, cases involving section 4361 do support the proposition that not all conveyances of legal title to property by deed or otherwise come within the purview of that section, but that, instead, the court must consider whether, in essence, the transaction was

a sale of the property. In Berry v. Kavanagh, 137 F.2d 574 (6th Cir. 1943), for example, the Sixth Circuit Court of Appeals found that the transfer by deed of an insolvent insurance company's assets to a reinsurer, as part of an arrangement whereby the reinsurer agreed to assume all valid outstanding obligations of the insolvent company, was not a sale within the meaning of the predecessor to section 4361, but was, instead, a creation of an agency relationship. The court pointed out that

> Whether a taxable sale occurs depends upon the intention of the parties gathered from their whole writing when giving to the words and phrases used, their ordinary signification.
> * * *
> If Congress had intended to levy a tax on every transfer of title it could have expressed its purpose in a sentence, but it is clear from the language of the section that it intended to confine the tax to actual sales.

137 F.2d at 576. Similarly, in Murray v. Hoey, 32 F.Supp. 1008 (S.D.N.Y. 1940), it was held that, where the charitable beneficiaries of a will deeded property to a charitable corporation created to effectuate the purposes of the will, there was no sale of property within the meaning of the statute. The court's interest in the purpose of the transaction and the intent of the parties is reflected in the following statement:

> To characterize an instrumentality to achieve Miss Wendel's purposes [*i. e.*, the charitable corporation] as a purchaser, or a formal step in the procedure of performance as a sale, within the obvious purpose of this taxing act, is to ignore plain realities.

32 F.Supp. at 1012. In United States v. Niagra Hudson Power Corp., 53 F. Supp. 796, 801 (S.D.N.Y.1944), a case involving a transfer of realty between two subsidiary corporations, the court stated:

> [A] mere transfer or change of legal title is not a taxable transaction under Schedule A–8 [a predecessor to

section 4361] which, as it now stands, expressly confines taxable transfers to "realty sold."

See also United States v. Seattle-First National Bank, 321 U.S. 583, 590, 64 S.Ct. 713, 88 L.Ed. 944 (1944) (realty transfer as a result of bank merger held not taxable, as Court considers "realities" of transaction); Raccoon Dev. Inc. v. United States, 391 F.2d 610, 183 Ct. Cl. 276 (1968) (a case opting for taxability but indicating the necessity for consideration of more than the fact of naked transfer of title); Jones v. Magruder, 42 F.Supp. 193 (D.Md.1941) (99-year "renewable forever" lease comes within the purview of the section, as the court considered realities and not "technical niceties"); Phillips Petroleum Co. v. Jones, 176 F.2d 737 (10th Cir 1949) (Oklahoma oil leases, which, as a practical matter, were without a fixed termination date, held to come within the purview of the section, as the court desired to examine the "practical purposes" of the transactions); Socony-Vacuum Oil Co. v. Sheehan, 50 F.Supp. 1010 (E.D.Mo.1943) (transfer of realty from dissolved subsidiary to parent corporation held not taxable); Tide Water Associated Oil Co. v. Jones, 57 F.Supp. 482 (W.D.Okl.1944) (transfer of realty from dissolved subsidiary to parent corporation held not taxable); Greyhound Corp. v. United States, 208 F.2d 858 (7th Cir. 1954) (transfer of realty from dissolved subsidiary to parent corporation held to be taxable, but only to the extent that the parent corporation paid the subsidiary's debts, since the payment of the debts was consideration for the transfer of the assets); R. H. Macy & Co. v. United States, 107 F.Supp. 883 (S.D.N.Y.1952) (transfer of realty from dissolved subsidiary to parent corporation held to be taxable, but only to the extent that the parent corporation paid the subsidiary's debts, since the payment of the debts was consideration for the transfer of the assets). In all of the cases cited, it was the purpose of the courts a) to consider the plain realities of the transaction, with the result that on occasion transfers of realty which did not result in a change in legal title were held to be taxable; and b) to consider, in the case of a technical transfer of legal title, whether the transaction was in fact a sale of realty. In applying that standard to the facts of the present case, and for the reasons heretofore stated, it is the court's conclusion that the transfers from the VA to plaintiff of legal title to the various properties did not constitute a sale within the meaning of section 4361.

In addition to defendant's generally tautological insistence that 26 U.S.C. § 4361 supports its position, defendant contends that, notwithstanding the fact that plaintiff's primary purpose in acquiring legal title may have been security rather than dominion, plaintiff did not in fact need legal title to be secured, in view of the provisions of VA Regulation 4600, by which the VA guaranteed payment to plaintiff of the remaining installment payments. In addition, defendant points out that, by virtue of its having received legal title, plaintiff as a matter of fact could have chosen, in the event of default by an installment purchaser, to ignore Regulation 4600 and rely upon its legal title and take possession of the property, which it then would have a perfect right to sell to another purchaser. Defendant contends that this untrammeled right of the plaintiff, in the event of default by the installment purchaser, indicates the nature of the plaintiff's acquisition of legal title to the property and also raises the possibility that, should plaintiff choose to ignore VA Regulation 4600 and assert its rights as owner of the property, plaintiff would have accomplished a complete transfer of the property from the VA without there being any taxation whatsoever upon that transfer. The court has no

easy answer to this contention; without deciding the question, as it is not presented in this case, the court could foresee at least the possibility of taxation at such time as the plaintiff ejected the installment purchaser and took possession of the property, since at that point the property's use as security for the installment debt would surely have ceased. The court would also want to point out that the defendant's contention as to the possibility that there might never be taxation of a completed transfer of both legal and equitable title to the property from the VA to the plaintiff brings to light the possibility that a converse—and equally undesirable—result might obtain if the VA-plaintiff transfer of legal title to the property were taxed: double taxation of what, in many cases, is essentially one transaction, that transaction being the effective sale of the property by the VA to the installment purchaser. It must be noticed that, at least in the case of many of the installment contracts into which the VA entered, the installment purchaser ultimately paid to the VA (and then plaintiff) the full amount of his obligation, and received from the plaintiff the legal title to the property, thereby merging legal and equitable title in the installment purchaser; both parties agree that, at the point where the installment purchaser took legal title, documentary tax stamps had to be affixed to the deed. The defendant's contention that stamps need also have been affixed at the time that the VA transferred legal title to the plaintiff would necessarily result in double taxation of what was essentially, in those cases, one transfer of land, that transfer being from the VA to the installment purchaser and the court cannot conceive that it could be the intent of the statute to provide for such taxation. In addition, the court must inquire if the defendant's position very basically places form over substance; the defendant apparently would not seek taxation had the transaction been designed differently, as, perhaps, by having the VA at

the outset transfer legal title in the property to the installment purchaser, retaining a mortgage over the property, which would be transferred to plaintiff along with and as security for the installment contract. The court must ask itself whether the question of taxability should turn on such distinctions.

Defendant also cites on its behalf § 47.4361–2(b) (6) of the Treasury Regulations, "Conveyances not subject to tax," which provides that "a contract for the sale of real property, if the contract does not vest legal title," in a conveyance not subject to taxation under section 4361. Defendant contends that, inasmuch as the VA-plaintiff transactions conveyed legal title to the property to the plaintiff, the language of the Regulation requires that the transactions be taxed pursuant to section 4361. The court is unconvinced as to the applicability of this provision of the Regulation, since it is not aware that the term "legal title" in the Regulation means, as it would have to in the present case for the Regulation to be applicable, "legal title without equitable title." There is no indication, in the Regulation or elsewhere, that the Regulation quoted was intended to encompass the type of transactions presented here, where the legal title to the property passed to the plaintiff, with the equitable title passing to the installment purchaser, by virtue of his contract rights to the property.

Instead, the court would prefer to point to § 47.4361–2(a) (6) of the Regulations, "Conveyances subject to tax," which lists, as a conveyance subject to the tax

Conveyances to or by building and loan associations. However, the tax does not apply to a conveyance of realty to a building and loan association for the purpose of securing a loan thereon * * *

The court would consider this Regulation to be most significant in two respects. First, it indicates, as the court noted earlier, the importance of consid-

ering the "purpose" of the conveyance which might be felt to be subject to the tax. Secondly, although the present case is not one where the VA or plaintiff *loaned* money to the installment purchaser, retaining title to the property as security, the court views the present case, where the plaintiff held legal title to the property as security for the *debt* of the installment purchaser (which debt did not arise by loan, but rather by contract to purchase), as being *in essence* the same transaction as that described in the Regulation; it cannot conceive of why, from the point of view of taxability, property held as security for a loan should be treated any differently from property held as security for any other type of debt, and conceives of the Regulation regarding loans as being supportive of its position.

The defendant cites in its behalf Rev. Rul. 66–375, 1966–2 Cum.Bull. 476, which does indeed support its position in this case. However, it is common doctrine that Revenue Rulings and other memoranda and opinions of the Internal Revenue Commissioner and his staff, as distinguished from Treasury Regulations, are not entitled to any particular weight whatsoever, and have "no more binding or legal force than the opinion of any other lawyer." United States v. Bennett, 186 F.2d 407 (5th Cir. 1951). See also, Bartels v. Birmingham, 332 U. S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); Tandy Leather Co. v. United States, 347 F.2d 693 (5th Cir. 1965); Kaiser v. United States, 262 F.2d 367 (7th Cir. 1958); Hirshon v. United States, 116 F.Supp. 135, 126 Ct.Cl. 587 (1953). The court in this particular case disagrees with the particular Revenue Ruling cited, and will pay no particular heed to it.

It being the court's view that the particular transactions between the plaintiff and the VA were not properly taxable under 26 U.S.C. § 4361, plaintiff's motion for summary judgment will be granted and defendant's motion will be denied.

Let an appropriate order be submitted.