273 P.3d 62 (2012)
2012 OK 24
J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, Successor by Merger to Chase Home Finance LLC, Plaintiff/Appellee,
v.
David S. ELDRIDGE, Mary K. Eldridge, Defendants/Appellants,
John Doe, Jane Doe, Railend LLC, Equity Trust Company Custodian FBO William Travis Pointon Ira, Northwood Lake Estates Homeowners Association, Inc., Douglas Shelton, Defendants.
No. 109,900.
Supreme Court of Oklahoma.
March 6, 2012.
*63 Marygaye LeBoeuf, Oklahoma City, Oklahoma, for Defendants/Appellants.
Catherine Campbell, Oklahoma City, Oklahoma, for Plaintiff/Appellee.
Sally Garrison, Baer Timberlake, Coulson & Cates PC, Oklahoma City, Oklahoma, for Plaintiff/Appellee.
Melvin R. McVay, Jr., Phillips Murray PC, Oklahoma City, Oklahoma, for Plaintiff/Appellee.
*64 COMBS, J.
¶ 1 On July 13, 2007, the Appellants executed a promissory note (Note) and mortgage (Mortgage) in favor of J.P. Morgan Chase Bank, N.A., (Lender) for residential property in Canadian County, Oklahoma. In both the Note and the Mortgage, "JP Morgan Chase Bank, N.A." was explicitly designated as the lender and payee, or entity to whom payment under the Note and Mortgage was due. The term "lender" was defined in the Mortgage as "JP Morgan Chase Bank, N.A., its successors and assigns." Continuing, "successors and assigns" were defined as "any person or company that acquires any interest in the note."
¶ 2 The Appellants voluntarily filed bankruptcy on March 25, 2009. In the Appellants' amended statement of intentions, they agreed to reaffirm the outstanding balance on the Note. Shortly thereafter, the Note went into default. The Appellee, Chase Home Finance Milwaukee, initiated foreclosure proceedings on February 4, 2010, claiming to be the present holder of the Note and Mortgage. Chase Home Finance Milwaukee claims to have acquired the Note and Mortgage by assignment from J.P. Morgan Chase Bank, N.A., in their motion for summary judgment filed on July 12, 2010. Mr. Eldridge, an attorney, one of the named Defendants, represented himself and his wife in the matter. The Appellants did not formally raise standing as a defense until almost a year after the litigation.[1] Instead, Appellants argued, the Lender was noncompliant with the Home Affordable Modification Program (HAMP),[2] and also improperly rejected multiple notices of rescission and a partial tender of amounts due, both of which were submitted by the Appellants during the summer and early fall of 2010.
¶ 3 The Lender did not assign the real estate mortgage to the Appellee until April 29, 2010. The assignment was filed with the Canadian County Clerk on June 24, 2010. This assignment occurred more than six (6) weeks after the original foreclosure proceedings were initiated by the Appellee. At a subsequent pre-trial hearing, the Appellee produced the original Note for the trial court. Until that pre-trial hearing, there is no evidence demonstrating that anyone other than the Lender was in possession of the original Note.
¶ 4 Rejecting each of the Appellants' arguments, the trial court granted summary judgment for the Appellee on May 13, 2011. In a journal entry of judgment, filed on August 26, 2011, the trial court found the Appellee was the undisputed owner and holder of the Note and Mortgage. Accordingly, judgment was entered in favor of the Appellee, and the Appellants' counterclaims were dismissed. On appeal to this Court, the Appellants argue the trial court erred in reaching this result. The August 26, 2011, Journal Entry of Judgment was the first indication that J.P. Morgan Chase Bank, N.A., was successor by merger from Chase Home Finance LLC. The only other indicant of this status is the text, at page 3, of that order which states:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff, JP Morgan Chase Bank, *65 National Association, successor by merger to Chase Home Finance LLC, ...
The reference to Chase Home Finance LLC, is the first mention of that entity. Previously, the entire litigation had been in the name of Chase Home Finance Milwaukee. We are unable to determine if Chase Home Finance LLC, is the same as Chase Home Finance Milwaukee, or when the merger occurred.

STANDARD OF REVIEW
¶ 5 An appeal on summary judgment comes to this court as a de novo review. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing the summary judgment. Rose v. Sapulpa Rural Water Co., 1981 OK 85, 631 P.2d 752. Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions. Gaines v. Comanche County Medical Hospital, 2006 OK 39, ¶ 4, 143 P.3d 203, 205.

ANALYSIS
¶ 6 Appellant argues Appellee does not have standing to bring this foreclosure action. Although Appellee has argued it holds the Note, there is no evidence in the record supporting it is a holder of the Note. The face of the Note does not indicate it was indorsed and the purported "assignment of mortgage" was filed after the filing of the foreclosure proceedings.
¶ 7 The issue presented to this Court is standing. This Court has previously held:
Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion. This Court has consistently held that standing to raise issues in a proceeding must be predicated on interest that is "direct, immediate and substantial." Standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself. The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome.
Matter of the Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, 576. In Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234, this Court also held:
Respondent challenges Petitioner's standing to bring the tendered issue. Standing refers to a person's legal right to seek relief in a judicial forum. It may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte. (emphasis original)
Furthermore, in Fent v. Contingency Review Board, 2007 OK 27, footnote 19, 163 P.3d 512, 519, this Court stated "[s]tanding may be raised at any stage of the judicial process or by the court on its own motion." Additionally in Fent, this Court stated:
Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in facti.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the outcome of a case and the parties are truly adverse.
Fent v. Contingency Review Board, 2007 OK 27, ¶ 7, 163 P.3d 512, 519-520. In essence, a plaintiff who has not suffered an injury attributable to the defendant lacks standing to bring a suit. And, thus, "standing [must] be determined as of the commencement of suit;..." Lujan v. Defenders of Wildlife, 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 2142, 119 L.Ed.2d 351 (1992).[3]
*66 ¶ 8 To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the Note and, absent a showing of ownership, the plaintiff lacks standing. Gill v. First Nat. Bank & Trust Co. of Oklahoma City, 1945 OK 181, 195 Okla. 607, 159 P.2d 717.[4] An assignment of the mortgage, however, is of no consequence because under Oklahoma law, "[p]roof of ownership of the note carried with it ownership of the mortgage security." Engle v. Federal Nat. Mortg. Ass'n, 1956 OK 176, ¶ 7, 300 P.2d 997, 999. Therefore, in Oklahoma it is not possible to bifurcate the security interest from the note. BAC Home Loans Servicing, L.P. v. White, 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017. Because the note is a negotiable instrument, it is subject to the requirements of the UCC. Thus, a foreclosing entity has the burden of proving it is a "person entitled to enforce an instrument" by showing it was "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 12A-3-309 or subsection (d) of Section 12A-3-418 of this title." 12A O.S.2001 § 3-301.
¶ 9 To show you are the "holder" of the note you must prove you are in possession of the note and the note is either "payable to bearer" (blank indorsement) or to an identified person that is the person in possession (special indorsement).[5] Therefore, both possession of the note and an indorsement on the note or attached allonge[6] are required in order for one to be a "holder" of the note.
¶ 10 To be a "nonholder in possession who has the rights of a holder" you must be in possession of a note that has not been indorsed either by special indorsement or blank indorsement. The record in this case reflects the Note has not been indorsed. No negotiation has occurred because the person now in possession did not become a holder by lack of the Note being indorsed as mentioned. Negotiation is the voluntary or involuntary transfer of an instrument by a person other than the issuer to a person who thereby becomes its holder. 12A O.S.2001, § 3-201. Transfer occurs when the instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. 12A O.S.2001, § 3-203. Delivery of the note would still have to occur even though there is no negotiation. Delivery is defined as the voluntary transfer of possession. 12A O.S.2001, § 1-201(b)(15). The transferee would then be vested with any right of the transferor to enforce the note. 12A O.S.2001, 3-203(b). Some jurisdictions have held, without holder status and, therefore, the presumption of a right to enforce, the possessor of the note must demonstrate both the fact of the delivery and the purpose of the delivery of the note to the transferee in order to qualify as the person entitled to enforce. In re Veal, 450 B.R. 897, 912 (9th Cir. BAP 2011). See also, 12A O.S.2001, § 3-203.
¶ 11 In the present case, Appellee has presented evidence of an unindorsed Note and an "Assignment of Mortgage." Without an indorsement on the Note, the Appellee cannot be a holder of the Note. Therefore, from the record presented to this Court, the Appellee, to establish they have the right to enforce the Note, must assert it is a nonholder in possession who has the rights of a holder.
¶ 12 The assignment of a mortgage is not the same as an assignment of the note. If an entity is trying to establish it is a nonholder in possession who has the rights of a holder, it must bear the burden of establishing *67 its status as a nonholder in possession with the rights of a holder. Appellee must establish delivery of the Note as well as the purpose of that delivery. In the present case, it appears Appellee is trying to use the assignment of mortgage in order to establish the purpose of delivery. The assignment of mortgage purports to transfer "[f]or value received, the undersigned J.P. Morgan Chase Bank, N.A., does hereby assign, transfer and set over unto Chase Home Finance Milwaukee that certain real estate mortgage dated June 15, 2007, granted by David S. Eldridge and Mary K. Eldridge, husband and wife, in favor of J.P. Morgan Chase Bank, N.A., in the principal sum of $215,000.00, filed July 13, 2007, recorded in Book 3347, Page 828, in the office of the County Clerk of Canadian County, State of Oklahoma, together with the note, debts and claims thereby secured ..." This assignment was filed on June 24, 2010, The original petition for foreclosure was filed on February 4, 2010, almost five months after Chase Home Finance Milwaukee filed the petition for foreclosure.
¶ 13 Appellee must show it became a "person entitled to enforce" prior to the filing of the foreclosure proceeding. In the present case, there is a question of fact as to when and if this occurred, and summary judgment is not appropriate. Therefore, we reverse the granting of summary judgment by the trial court and remand back for further determinations. If J.P. Morgan Chase Bank, NA, as successor by merger to Chase Home Finance LLC, became a person entitled to enforce the Note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may be dismissed without prejudice and the action may be re-filed in the name of the proper party.

CONCLUSION
¶ 14 It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and to have the proper supporting documentation in hand when filing suit, showing the history of the note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A O.S. 2001, § 3-309 or 12A O.S.2001, § 3-418. Likewise, for the homeowners, absent adjudication on the underlying indebtedness, the dismissal cannot cancel their obligation arising from an authenticated note, or insulate them from foreclosure proceedings based on proven delinquency. This Court's decision in no way releases or exonerates the debt owed by the defendants on this home. See, U.S. Bank National Association v. Kimball 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (Vt.2011); and Indymac Bank, F.S.B. v. Yano-Horoski, 78 A.D.3d 895, 912 N.Y.S.2d 239 (2010).

REVERSED AND REMANDED WITH INSTRUCTIONS
¶ 15 CONCUR: TAYLOR, C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, JJ.
¶ 16 CONCUR IN PART; DISSENT IN PART: WINCHESTER (JOINS GURICH, J.), GURICH (BY SEPARATE WRITING), JJ.
¶ 17 RECUSED: COLBERT, V.C.J.
GURICH, J., with whom WINCHESTER, J. joins concurring in part and dissenting in part:
¶ 1 The Petition in this case was filed in the name of Chase Home Finance Milwaukee. Although, Plaintiff filed a First Amended Petition, the name of the Plaintiff was not amended. The Final Journal Entry of Judgment inexplicably grants judgment to JP Morgan Chase Bank, National Association, successor by merger to Chase Home Finance LLC. As such, I concur that a question of fact remains as to the correct identity of the Plaintiff, and summary judgment was improper in this case.[1]
*68 ¶ 2 However, I respectfully dissent to the majority's statement that "[t]o commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note, and absent a showing of ownership, the plaintiff lacks standing." See Majority Op. ¶ 5. Gill v. First Nat. Bank & Trust Co., 1945 OK 181, 195 Okla. 607, 159 P.2d 717.[2] I agree that in any foreclosure action a party must demonstrate it is the proper party to request adjudication of the issues. However, the issue of whether a party is the proper party to request adjudication of the issues is a real-party-in-interest issue, not an issue of "standing," as the majority frames it. See Toxic Waste Impact Group, Inc. v. Leavitt, 1994 OK 148, 890 P.2d 906 (Opala, J., concurring). Justice Opala framed the issue correctly in Toxic Waste Impact Group:
Standing in the federal legal system is imbued with a constitutional/jurisdictional dimension, while in the body of state law it fits under the rubric of ordinary procedure. The U.S. Constitution, Article III, has long been held to require that a "case" or "controversy" is essential to invoke federal judicial jurisdiction and that a person's competence to bring an action is a core component of standing in a case-or-controversy inquiry. It is for this reason that standing is an integral part of the mechanism for invoking the federal judiciary's power.
Oklahoma's fundamental law places no restraint on the judiciary's power analogous to the federal case-or-controversy requirement. Under the earlier Code of Civil Procedure the suit had to be brought by the real party in interest. That requirement has always been non-jurisdictional. If a state court proceeded to adjudicate a claim pressed by one not in that status, its decision was not fraught with jurisdictional infirmity but rather regarded as erroneous for want of proof to establish an important element of the claim. An error in this category is waivable at the option of the defendant; and, if not asserted on appeal, the reviewing court may reach the merits of the case despite a plaintiff's apparent lack of standing at nisi prius.
Toxic Waste Impact Group, Inc. v. Leavitt, 1994 OK 148, 890 P.2d 906 (Opala, J., concurring, ¶¶ 2-3) (emphasis added); see also Black Hawk Oil Co. v. Exxon, 1998 OK 70, ¶ 24, 969 P.2d 337, 344 ("Using the term `standing' to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed.... A defendant is entitled to have the suit against him prosecuted by the `real party in interest' but `his concern ends when a judgment for or against the nominal plaintiff would protect defendant from any action non same demand by another.") (Watt, J., Majority Op.)
¶ 3 The majority in this case cites Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234 and Fent v. Contingency Review Board, 2007 OK 27, n. 19, 163 P.3d 512, 519 for the proposition that "standing may be raised at any stage of the judicial process or by the court on its own motion." See Majority Op. ¶ 4. Those cases cite Matter of the Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, as authority for this proposition. Arguably, however, Doan misstates the law:
Ever since the Code of Civil Procedure was replaced in 1984 by the Pleading Code, our nomenclature for identifying the party entitled to sue, which began to follow that of federal jurisprudence, has used "standing" as if it were a functional equivalent of the earlier procedural terms of *69 artreal party in interest, one with appealable interest, one occupying the aggrieved-party or pecuniary-interest status. It was during this transition that one of our opinions inadvertently referred to "standing" in terms of a jurisdictional requirement, thus creating the misimpression that the term has a jurisdictional dimension. Oklahoma's constitution has no case-or-controversy clause. Standing is hence to be viewed as an adjective-law concept. The inadvertent reference to the contrary should be treated as ineffective to alter standing's true character in the body of our procedural law.
....
I concur in today's opinion and in the disposition of the cause. If I were writing for the court, I would additionally declare that Doan's inadvertent reference to federal law is to be viewed as withdrawn. Lujan's tripartite standing test, which we adopt today, must be treated as having been received sans its federal jurisdictional baggage.
See Toxic Waste Impact Group, 1994 OK 148, 890 P.2d 906 (Opala, J., concurring ¶ 4).
¶ 4 Additionally, both Hendrick and Fent were original actions in this Court. As such, "standing" could have been raised at any point by this Court sua sponte. However, in a proceeding in District Court, because it is a non-jurisdictional issue, failure to assert that the Plaintiff is not the real party in interest may be waived. See Liddell v. Heavner, 2008 OK 6, n. 5, 180 P.3d 1191 (Opala, J., majority Op.); see also 12 O.S.2012 § 2008(D).
¶ 5 In this case, the facts demonstrate that Defendant raised this issue in the Answer as well as in the Response to Motion for Summary Judgment. As such, the issue was properly appealed.
¶ 6 The majority also holds that a foreclosing party must have the "proper supporting documentation in hand when filing suit." See Majority Op. ¶ 10 (emphasis added). Oklahoma pleading procedure does not require a plaintiff to have all evidence necessary to prevail on its claim at the time of the filing. Rather, what is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." 12 O.S.2012 § 2008(A)(1). Additionally, 12 O.S. 2012 § 2011(B)(3) provides that an attorney filing anything with the court certifies that to "the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." 12 O.S.2012 § 2011(B)(3) (emphasis added).[3] Mortgage foreclosures, like other civil actions, allow the parties to continue to investigate and discover evidence up until the time of judgment.
¶ 7 While I agree that questions of fact exist so that summary judgment was improper in this case, I cannot agree with the majority's holding that the plaintiff must have the "proper supporting documentation in hand when filing suit" because no authority states such and the Oklahoma pleading code requires otherwise.
NOTES
[1] Standing was implicitly raised earlier in the litigation. In their Answer and Amended Answer, the Appellants said that they did not know whether the Appellee was the holder and owner of the Note. Not until the Appellants filed their Response to Plaintiff's Motion for Summary Judgment and Motion to Dismiss on July 27, 2010 was possession of the Note called into question. In Mr. and Mrs. Eldrige's [sic] Brief In Support of Their Motion for Summary Judgment, filed on February 25, 2011, standing was formally raised as a defense. It is settled law in Oklahoma that standing "may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte." Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234. (emphasis original).
[2] HAMP is a federal loan modification program provided for under the scope of the Troubled Asset Relief Program (TARP). 12 U.S.C. § 5211. Pursuant to a Supplemental Directive 10-02 of HAMP, passed on March 25, 2010, mortgage servicers are required to (i) check Borrower eligibility for HAMP program protections and (ii) if the Borrower is determined to be eligible, make reasonable attempts to modify the terms of the loan prior to seeking foreclosure. HAMP applies to the Lender pursuant to a Servicer Participation Agreement entered into between the Lender and the Federal National Mortgage Association in March of 2010.
[3] The concurring in part; dissenting in part opinion in this matter relies upon Justice Opala's concurring opinion in Toxic Waste Impact Group, Inc. v. Leavitt, 1994 OK 148, 890 P.2d 906, for the proposition that standing is not a jurisdictional question. Justice Opala's concurring opinion was not the majority opinion of this Court and as such "a minority opinion has no binding, precedential value." 20 Am.Jur.2d Courts § 138.
[4] This opinion occurred prior to the enactment of the UCC. It is, however, possible for the owner of the note not to be the person entitled to enforce the note if the owner is not in possession of the note. (See the REPORT OF THE PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE, APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATING TO MORTGAGE NOTES (NOVEMBER 14, 2011)).
[5] 12A O.S.2001, §§ 1-201(b)(21), 3-204 and 3-205.
[6] According to Black's Law Dictionary (9th ed. 2009) an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." See, 12A O.S.2001, § 3-204(a).
[1] Attached to Plaintiff's Petition were copies of the unindorsed note and mortgage. Defendant David S. Eldridge, a licensed attorney, answered as counsel for the parties and raised the affirmative defense of status and capacity of the Plaintiff to bring the action. Later, Defendants filed an amended answer and multiple Motions for Summary Judgment. Plaintiff's counsel produced the original unindorsed note and the assignment of the mortgage, and the trial court granted judgment in favor of the Plaintiff. On remand, the trial court, rather than dismiss the petition, may allow the Plaintiff to amend its petition. HSBC Bank USA v. Lyon, 2012 OK 10, ¶ 1, ___ P.3d ___, 2012 WL 453621.
[2] In Gill, the plaintiff brought an action to foreclose a mortgage on real property. There was no discussion in the case of whether the plaintiff had standing to bring the action or whether the plaintiff was the real party in interest. In fact, the case was tried to the Court, and the appeal turned on the sufficiency of evidence presented at trial. The Gill decision stands for the proposition that the assignment of the note carries with it an assignment of the mortgage. It is not relevant to the standing analysis, nor does it stand for the proposition that the plaintiff must prove at the time of filing that it has a right to enforce the note.
[3] Likewise, while I agree that the UCC applies in this case because the note is a negotiable instrument, the UCC does not require that a foreclosing entity prove at the time of filing that it is the person entitled to enforce the instrument.