2014 OK 52

MURRAY COUNTY, Oklahoma, County Commissioners ex rel. Murray County, Oklahoma and Johnston County, Oklahoma, County Commissioners ex rel. Johnston County, Oklahoma, Plaintiffs/Respondents,

v.

HOMESALES, INC., JP Morgan Chase Bank, N.A. (for itself and as successor by merger to Chase Home Finance, LLC), and EMC Mortgage, LLC f/k/a EMC Mortgage Corporation, Defendants/Petitioners,

and

Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems (MERS), Household Finance Corp, III, U.S. Bank National Association, Flagstar Bank, FSB, Wachovia Bank, N.A., Aurora Loan Services, LLC, Homecomings Financial Network, LLC, Belvedere Trust Finance, Deutsche Bank National Trust Company, and Millennium State Bank of Texas, Defendants.

No. 111,663.

Supreme Court of Oklahoma.

June 24, 2014.

522

"sale" for purposes of the Documentary Stamp Tax Act. We hold that the transfer of real property between affiliated corporations or transfers on behalf of the beneficial owner of real property are not taxable if any consideration paid does not exceed $100.

## FACTS

¶ 2 This case involves the conveyance of title to real property as a result of four real estate foreclosure proceedings. Chase filed each foreclosure case and was the successful bidder at each sheriff's sale. Therefore, Chase was entitled to a sheriff's deed to each of the properties. However, Chase did not take title. Instead, sheriff's deeds were granted to Chase's affiliated entities. The deeds were recorded with the respective county clerks. The grantees noted on the conveyances that the deeds were exempt from documentary taxes. And, no documentary taxes were paid.

¶ 3 The Counties contend the conveyances involved in this case are not exempt and filed this suit to collect the applicable documentary taxes. On November 28, 2011, the Counties filed their First Motion for Partial Summary Judgment. In its response, Chase argued that the Counties did not have standing to enforce the provisions of the DSTA and that the deeds at issue were exempt from documentary taxes. The district court granted the Counties' motion for partial summary judgment on February 11, 2013, and then certified "that an immediate appeal would materially advance the ultimate termination of this litigation." *See* Okla. Sup.Ct. R. 1.50, 12 O.S.2011, ch. 15, app. 1. We granted the Defendants' petition for certiorari to review the district court's interlocutory order.[2]

Clyde A. Muchmore, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Defendants/Petitioners.

Kenneth M. Kliebard, Morgan, Lewis & Bockius, LLP, Chicago, Illinois, for Defendant/Petitioners.

Darryl F. Roberts and Jason D. May, P.O. Box 1568, Ardmore, Oklahoma, for Plaintiffs/Respondents.

FISCHER, S.J.:

¶ 1 In this appeal, we must determine whether a transfer of real property between affiliated business entities constitutes a

## STANDARD OF REVIEW

 ¶ 4 The Defendants argue in this appeal that the order granting partial summary judgment should be reversed for two reasons: (1) the Counties lack standing to enforce the provisions of the DSTA; and (2)

2. The Defendants previously filed with this Court an Application to Assume Original Jurisdiction and Petition for Writ of Mandamus or Prohibi-

tion on July 11, 2012, case no. 110,868. This Court denied the application and declined to assume jurisdiction.

the post-foreclosure conveyances are exempt from documentary taxes. The district court's order granting summary judgment is reviewed *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. That review requires examination of the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699.

■■■ ¶ 5 Legal questions involving the district court's statutory interpretation of the DSTA are also subject to *de novo* review. *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654. The primary goal of statutory construction is to ascertain and apply the intent of the Legislature that enacted the statute. *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 13, 33 P.3d 302, 307.

## ANALYSIS

■■■ ¶ 6 The Documentary Stamp Tax Act imposes a tax on certain transfers of real property:

A tax is hereby imposed on each deed, instrument or writing by which any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to or vested in the purchaser ... when the consideration or value of the interest or property conveyed ... exceeds One Hundred Dollars ($100.00).

68 O.S.2011 § 3201(A). " 'Sold' means a transfer of an interest for a valuable consideration, which may involve money or anything of value." 68 O.S.2011 § 3201(C)(1).

"Consideration" is defined as "the actual pecuniary value exchanged or paid ... for the transfer or conveyance of an interest of realty...." 68 O.S.2011 § 3201(C)(3). When a sale of real property occurs, a documentary tax is levied on "the privilege of executing a 'deed, instrument or writing' that effects transfers of 'land, tenements and other realty.' " *Johnston v. Oklahoma Tax Comm'n*, 1972 OK 88, ¶ 9, 497 P.2d 1295, 1297. The tax is collected through the sale of documentary stamps provided by the Oklahoma Tax Commission (OTC) and sold by the county clerks. 68 O.S.2011 §§ 3203 and 3204. The county clerk is authorized to retain and deposit in the county general fund five percent of the first $0.55 of every $0.75 collected and the remaining $0.20 of each $0.75 collected. 68 O.S.2011 § 3204(B)(1) and (C). The balance is forwarded to the OTC. 68 O.S.2011 § 3204. However, certain transfers of real property are exempt from the documentary tax. *See* 68 O.S.2011 § 3202; Okla. Admin. Code § 710:30–1–9.

■■■ ¶ 7 The facts dispositive of this appeal are established from two sources, the judgments in the foreclosure cases and the summary judgment record. The judgments in the foreclosure proceedings are now final and are not subject to collateral attack in this case "in the absence of fraud, mistake or collusion," none of which have been asserted with respect to the those judgments.[3] *Chandler v. Denton*, 1987 OK 109, ¶ 10, 747 P.2d 938, 941. Further, those judgments are presumed to include a finding of every fact required to support the judgment. *Gage v. Estep*, 1966 OK 52, 422 P.2d 449. The facts and the inferences drawn from the summary judgment record "must be taken in favor of the party opposing the motion." *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK

---

**3.** The Counties contend that, in part, their suit is based on fraudulent representations made by the Defendants. The Counties argue that the fraud occurred when the Defendants misrepresented to the County Clerks that they were entitled to exemptions for the conveyances made subsequent to the entry of the judgments in the foreclosure actions in violation of the DSTA. The Counties do not alleged any fraud by Chase in procuring the foreclosure judgments. Further, our determination in Part I of this Opinion that the Counties do not have authority to prosecute violations of the DSTA disposes of the Counties' argument that they are permitted to assert a "fraud claim" in this litigation. One convicted of violating the DSTA is subject to the fines and penalties set out in 68 O.S.2011 § 3206. A county clerk's role in that process is specifically defined in paragraph D of that statute: "Should the county clerk become aware that the provisions of the documentary stamp law have or might have been violated, he or she shall immediately report the facts to the Oklahoma Tax Commission."

43, ¶ 14, 792 P.2d 50, 56. So viewed, the record establishes that at the time each of the four foreclosure actions was filed, Chase was the holder of a promissory note and mortgage securing repayment of the note on the real property being foreclosed or that it was the party entitled to enforce those instruments. After the borrowers defaulted, Chase successfully sued to collect the unpaid balance of the notes and foreclose its mortgages. Each case resulted in a judgment in favor of Chase for the note balance. The judgments also foreclosed Chase's mortgages and directed the sheriff to sell the property secured by the mortgages. Chase was the successful bidder at the sheriff's sale in each case and subsequently filed a motion to confirm the sales.

¶ 8 The district court orders confirming the sales recite that the properties were sold to Chase, that the sales were made in conformity with the statutes of Oklahoma and that at the hearing on the motions to confirm the sales Chase assigned all of its right, title and interest in the properties. In three of the proceedings, Chase assigned its interest to Homesales. Homesales is a wholly owned subsidiary of Chase. In the fourth foreclosure action involving property previously owned by Linda Gentry, Chase assigned its interest to the Federal National Mortgage Association (FNMA). FNMA was the beneficial owner of the Gentry property and Chase was acting as FNMA's agent in that foreclosure. At the direction of the district court and Chase, the sheriff executed deeds to Homesales and FNMA. The deeds state that they are exempt from documentary stamp tax pursuant to section 3202(13): "Any deed executed pursuant to a foreclosure proceeding in which the grantee is the holder of a mortgage on the property being foreclosed...." The Counties contend that no exemption from documentary stamp tax is available for the conveyances subsequent to Chase's oral assignment of its interest in the properties at the confirmation hearings. They filed this suit to enforce section 3201 and collect the documentary taxes they contend are due.

## I.

### THE COUNTIES DO NOT HAVE STATUTORY AUTHORITY TO PROSECUTE VIOLATIONS OF THE DOCUMENTARY STAMP TAX ACT

¶ 9 The initial issue raised by Chase is whether the Counties have standing to sue to collect unpaid documentary taxes. "Taxation is an exclusively legislative function that can be exercised only under statutory authority and in the manner specified by statute." *State ex rel. Oklahoma Tax Comm'n v. Texaco Exploration & Prod., Inc.,* 2005 OK 52, ¶ 7, 131 P.3d 705, 707 (citing *Gay v. Thomas,* 1896 OK 67, 46 P. 578). Chase contends that only the OTC has statutory authority to enforce the DSTA and, therefore, the Counties do not have standing to prosecute this action. Chase specifically points to section 3205 of the DSTA: "The Oklahoma Tax Commission through the Documentary Stamp Tax Unit shall be responsible for the administration and enforcement of the taxes as imposed by Section 3201 of this title." Chase's argument depends on the construction of this language. "When the Legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and a statute will be applied as written." *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 13, 33 P.3d at 307 (citations omitted). Here, the plain language of the statute states that the OTC is "responsible for the administration and enforcement" of the DSTA through the OTC's Documentary Stamp Tax Unit. 68 O.S. 2011 § 3205. The Counties argue, however, that nothing in the DSTA expressly states that the OTC is solely responsible for administration and enforcement or that county clerks are prohibited from filing enforcement actions. Construction of the DSTA is necessary to resolve these questions.

¶ 10 The Counties do not address the effect of section 3205 of the DSTA. They rely on their general authority to "sue and be sued." 19 O.S.2011 § 1. From this, the Counties conclude that they may exercise this authority and initiate judicial proceedings to prosecute violations of the DSTA because they are the governmental entities

charged with collecting documentary taxes. Section 3204(A) does provide that "the county clerks shall have the responsibility of selling [documentary] stamps and shall have the further duty of accounting for the stamps to the Oklahoma Tax Commission on the last day of each month." And, general principles of statutory construction require parts of a legislative enactment to be construed so as to "harmonize [each provision] with all the others." *Oklahoma Natural Gas Co. v. State ex rel. Vassar*, 1940 OK 137, ¶ 10, 187 Okla. 164, 101 P.2d 793, 796. Even so, the construction of individual provisions of a statutory scheme must be consistent with the overriding policy of the entire enactment as intended by the Legislature. *Id.* We find the Counties' argument unpersuasive.

■ ¶ 11 First, it is the policy of this State, "to provide, so far as possible, uniform procedures and remedies with respect to all state taxes." 68 O.S.2011 § 201 (describing the purpose of the Uniform Tax Procedure Code). Unless expressly provided otherwise, the Uniform Tax Procedure Code "shall control and shall be exclusive." *Id.* The Legislature has vested in the OTC the authority to "enforce the provisions of [the Uniform Tax Procedure Code] and to promulgate and enforce any reasonable rules with respect thereto." 68 O.S.2011 § 203. Although the OTC is required to "coordinate with city and county governments to increase state and local sales and use tax collections through joint enforcement efforts," the OTC maintains "central administration" of such efforts. 68 O.S.2011 § 281. As later discussed in this Opinion, it does not appear the OTC and the Counties share the same view regarding the taxability of the conveyances at issue in this case. Uniform procedures and remedies for the assessment and collection of documentary taxes cannot be achieved if the results depend on the county in which the transaction occurred. "The construction placed on a statute by officers in the discharge of their duties . . . which has been long acquiesced in, is a just medium for its judicial interpretation." *Oklahoma Tax Comm'n v. Liberty Nat'l Bank & Trust Co.*, 1955 OK 208, ¶ 0, 289 P.2d 388 (syllabus 1). Only the OTC has been charged by the Legislature with developing and implementing uniform tax policy.

■ ¶ 12 Second, the Counties' position conflicts with the general statutory procedure established by the Legislature for collecting unpaid taxes. That procedure begins with an administrative determination by the OTC that taxes are due and on certification of the debt, the entry of, in effect, a judgment for the taxes due. 68 O.S.2011 §§ 221 and 230. The OTC may also issue a tax warrant for unpaid taxes to a county sheriff. 68 O.S.2011 § 231. In either instance, the county clerk is charged with the ministerial task of filing the OTC's certification or warrant. Generally, the OTC's administrative process is a prerequisite to litigation. *State ex rel. Oklahoma Tax Comm'n v. Texaco Exploration & Prod., Inc.*, 2005 OK 52, 131 P.3d 705 (OTC may not bypass the administrative process and file suit in district court except where a false or fraudulent report is filed with intent to evade taxes). When litigation is necessary, the Legislature requires that suit be filed "in the name of the State of Oklahoma, on relation of the Oklahoma Tax Commission." 68 O.S.2011 § 215(a). In none of these statutes is any authority granted to county clerks to sue to collect unpaid taxes.

¶ 13 The only governmental officer other than the general counsel of the OTC who is statutorily authorized to file suit to recover unpaid taxes is the Attorney General. 68 O.S.2011 § 250. If the Legislature has authorized the Attorney General to do so, it could have also provided similar authorization for county clerks. The fact that it did not supports the conclusion that the Legislature did not intend for counties to have direct enforcement authority to collect unpaid taxes. *See McSorley v. Hertz Corp.*, 1994 OK 120, ¶ 19, 885 P.2d 1343, 1350–51 (omission of self-insurers from the list of those statutorily required to offer uninsured motorist coverage was evidence of legislative intent not to require self-insurers to offer uninsured motorist coverage). Nor can we conclude that this omission was inadvertent, at least with respect to the DSTA. The Legislature specifically addressed the county clerk's enforcement role in that context. If a county clerk becomes "aware" that a taxpayer has not or might not have paid the correct amount of

documentary tax, the clerk must "immediately report the facts to the Oklahoma Tax Commission." 68 O.S.2011 § 3206(D). No provision of the DSTA authorizes county clerks to take any further action. "The lawmaking body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses." *Yocum v. Greenbriar Nursing Home*, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. The enforcement authority of the OTC and the role of the county clerks in that process are specifically addressed in the DSTA. County clerks are required to sell documentary stamps, account for the proceeds and report any suspected violation to the OTC. Although the Counties' have general authority to sue granted in Title 19 O.S.2011 § 1, they have not been granted any similar authority in the specific DSTA statutes at issue here. "Where a matter is addressed by two statutes, one specific and the other general, the specific statute governs over the general provision." *Jones v. State*, 2011 OK 105, ¶ 14, 268 P.3d 72, 76. *Cf., Dowell v. Pletcher*, 2013 OK 39, 304 P.3d 735 (affirming dismissal of county clerk in action by bail bondsman challenging the "Ten Bond Rule" finding clerk had no enforcement authority because Legislature implemented detailed procedure giving Insurance Commissioner "full power and authority" to enforce the rule).

¶ 14 Third, rules promulgated by the OTC for the administration and enforcement of the DSTA confirm that county clerks do not have direct enforcement authority. *See* 68 O.S.2011 § 3205: "The Oklahoma Tax Commission shall prescribe such rules and regulations as it may deem necessary to carry out the purpose of Sections 3201 through 3206 of this title." Pursuant to this authority, the OTC promulgated rules "to facilitate the administration, enforcement, and collection of taxes and other levies enacted by the Oklahoma Legislature with respect to documentary stamps." Okla. Admin. Code § 710:30-1-1 (codified Dec. 30, 1991). Those rules were adopted by the Legislature and now "have the force of law" (75 O.S.2011 § 308.2(C)), subject to judicial review. 75 O.S.2011 § 306(C) ("Rules promulgated pursuant to the provisions of the Administrative Procedures Act are presumed to be valid until declared otherwise by a district court of this state or the Supreme Court."); *Indep. Sch. Dist. No. I-20 of Muskogee County v. Okla. State Dep't of Educ.*, 2003 OK 18, 65 P.3d 612 (agency rule may be challenged pursuant to the declaratory judgment provision of 75 O.S. § 306). The OTC's rules very clearly describe the different roles of the OTC and the county clerks with respect to the collection of documentary taxes. Rule 710:30-1-10 sets out the "Duties and responsibilities of the county clerk." The Rule states: "County clerks are responsible for selling Documentary Stamps to the taxpayers and have the duty of accounting for the stamps to the Oklahoma Tax Commission." The county clerk's role in the enforcement of the DSTA is limited to two functions. "In order to make a correct determination of tax due, the county clerks have the duty to request taxpayers to produce satisfactory documentation which correctly discloses the value of the property." Okla. Admin. Code § 710:30-1-10(2). "If the taxpayer claims exemption from the payment of the documentary stamp tax, and there is no notation on the deed indicating the reason for the claiming of the exemption, the county clerk shall make a brief notation on the face of the deed indicating the reason for claiming the exemption." Okla. Admin. Code § 710:30-1-10(5). Rule 710:30-1-7 provides that if a taxpayer does not pay the necessary amount of documentary taxes "the Commission shall" send a proposed tax assessment to the taxpayer. The taxpayer can challenge that assessment by filing a protest with the Commission. However, no authority is provided in the OTC's rules for county clerks to decide a taxpayer's protest. Any protest "will be forwarded to the General Counsel's Office of the Oklahoma Tax Commission for disposition." *Id.*

¶ 15 The rules promulgated by the OTC and adopted by the Legislature for the enforcement of the DSTA provide that the county clerks have a subordinate and ministerial role in that process. "For the purpose of collecting the [documentary] stamp tax, the county clerks act as agents of the Oklahoma Tax Commission." Okla. Admin. Code § 710:30-1-10. The essential factor in any agency relationship is the princi-

pal's right to control the conduct of the agent. *Enterprise Mgmt. Consultants, Inc. v. State ex rel. Oklahoma Tax Comm'n,* 1988 OK 91, ¶ 6, n. 13, 768 P.2d 359, 362. And, an agent cannot unilaterally expand the scope of authority specified by the principal. *Home Owners' Loan Corp. v. Thornburgh,* 1940 OK 424, 187 Okla. 699, 106 P.2d 511. The Counties have cited no rule by which the OTC has delegated to them the authority to file suit to collect unpaid documentary taxes, much less any authorization from the OTC to file this law suit.[4] In all of the applicable statutory provisions, only the OTC is specifically charged with "enforcement of the taxes as imposed by Section 3201." 68 O.S.2011 § 3205. No provision of the DSTA similarly authorizes a county to do so. "[T]he general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." *Stemmons, Inc. v. Universal C.I.T. Credit Corp.,* 1956 OK 221 ¶ 19, 301 P.2d 212, 216. We will not read into the DSTA authority for the Counties to prosecute violations of the Act when the Legislature has declined to do so.

## II.

### THE COUNTIES HAVE STANDING TO SEEK DECLARATORY RELIEF

 ¶ 16 Even though we find that the Counties do not have statutory authority to prosecute violations of the DSTA, that does not necessarily mean that they do not have standing to bring this case. Although the OTC has primary responsibility for administration and enforcement of the DSTA, it does not have ultimate authority to determine when documentary taxes are due. This Court is the final arbiter of disputed tax

matters. Okla. Const. art. VII, § 4; 68 O.S. 2011 § 225 (taxpayer aggrieved by any order of the Tax Commission may appeal to Supreme Court), and § 3027(final orders from the Court of Tax Review may be appealed to the Supreme Court); *Turner v. Oklahoma Tax Com'n,* 1993 OK 77, 858 P.2d 433 (Legislature has made the Supreme Court the final arbiter of the meaning of tax statutes). Further, this Court has previously recognized the standing of parties to invoke this Court's jurisdiction and determine disputed tax matters even in the absence of statutory authority to do so. *Oklahoma Tax Comm'n v. Smith,* 1980 OK 74, 610 P.2d 794 (potential taxpayer could sue for declaratory relief where statutory remedy to sue for refund of tax paid was not available to challenge constitutionality of taxing statute before tax was due); *Independent School District No. 9 v. Glass,* 1982 OK 2, 639 P.2d 1233 (abrogated in part by constitutional amendment) (school district could seek injunction preventing payment of tax refund and challenge exemption claimed by a taxpayer). Finally, this Court has long-recognized the availability of its equitable powers to protect the public treasury from unlawful dissipation or management by those officially charged with the care and custody of public funds. *Fent v. Contingency Review Bd.,* 2007 OK 27, ¶ 8, 163 P.3d 512, 519 (citing *Kellogg v. School Dist. No. 10 of Comanche County,* 1903 OK 81, 74 P. 110). The question, therefore, is whether the Counties have demonstrated their standing to invoke the jurisdiction of Oklahoma courts in this case.

 ¶ 17 " 'Standing' is the right to commence litigation, to take the initial step that frames legal issues for ultimate adjudication by a court or jury." *State ex rel. Bd. of Regents v. McCloskey Bros., Inc.,* 2009 OK

---

4. The transcript of the Hearing on the Motion to Dismiss held on May 16, 2012, provides at p. 21–22:

THE COURT: Well, no, 3206 says any person who willfully fails to purchase or affix the exact amount of stamps upon conviction be convicted of a thousand dollar fine and one year in jail and then it has—section D it says, "should the County Clerk become aware of the provisions of the documentary stamp law have or might have been violated, he or she shall immediately report the facts to the Oklahoma Tax Commission."

MR. ROBERTS: And that's been done.
THE COURT: That's been done. Is the Tax Commission—
MR. ROBERTS: The District Attorney—
THE COURT:—reviewing that?
MR. ROBERTS: Excuse me. The District Attorney prior to filing this action and prior to my being hired by the counties, with approval of the District Attorney, did make that contact. They have taken no action, but there's nothing—there's been no citation law that says, the exclusive remedy is a criminal prosecution....

90, ¶ 18, 227 P.3d 133, 144. The doctrine of standing identifies those disputes that are appropriately resolved through the judicial process. *Fent,* 2007 OK 27, ¶ 7, n. 20, 163 P.3d at 519 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). Standing requires proof of:

(1) a legally protected interest which must have been injured in fact- i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision.

*Fent,* 2007 OK 27, ¶ 7, 163 P.3d at 519 (citing *Cities Serv. Co. v. Gulf Oil Corp.,* 1999 OK 16, ¶ 3, *976 P.2d 545,* 547, and *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, ¶ 8, 890 P.2d 906, 910). "The appropriate inquiry on a standing question is whether the plaintiff has in fact suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions." *Leavitt,* 1994 OK 148, ¶ 9, 890 P.2d at 911. Standing is an aspect of justiciability, and "focuses on the party seeking to get [a] complaint before the court and not on the issues tendered for determination. In standing problems the inquiry posed is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the tendered controversy." *Application of State ex rel. Dep't of Transp.,* 1982 OK 36, ¶ 6, 646 P.2d 605, 609.

¶ 18 This Court dealt with a similar issue in *Independent School District No. 9 v. Glass,* 1982 OK 2, 639 P.2d 1233. *Glass* involved a suit by a school district challenging a refund payable as the result of a tax exemption claimed by a taxpayer. The taxpayer's property was located in the school district and granting the exemption would directly reduce the revenue received by the district. *Cf., Indep. Sch. Dist. No. 5 of Tulsa County v. Spry,* 2012 OK 98, 292 P.3d 19 (school districts lacked standing to challenge voucher program where funds at issue were part of legislative appropriation rather than taxes paid by school district taxpayers). The

board of tax-roll corrections granted the taxpayer's request and the school district sued to enjoin payment of the refund. As in this case, the taxing statute in *Glass* did not authorize enforcement by the school district. That remedy was available only to the taxpayer or the county assessor. *See* 68 O.S. Supp.1974 § 2479. Nonetheless, this Court held that injunctive relief was available because the statutory remedy was not. "We agree with the District that it has standing to seek injunctive relief. The District has an interest in the subject matter, the capacity to sue, and the power to protect and prevent the wrongful disposition of revenues." *Glass,* ¶ 11, 639 P.2d at 1238.

¶ 19 Even though the school district in *Glass* was ultimately unsuccessful in preventing the tax refund, as relevant to the standing issue in this case, *Glass* is indistinguishable. The Counties have the capacity to sue. The statutory remedy for direct enforcement of the DSTA is not available to the Counties. However, the relief sought by the Counties is not limited to collection of the allegedly unpaid documentary taxes. The Counties also seek an "[a]djudication by the Court that documentary stamp taxes are due pursuant to 68 O.S. § 3201 [and] … that exemptions from the purchase of documentary stamps made by the defendants pursuant to 68 O.S. § 3201 were [not] lawful." When statutory relief is inadequate, equitable relief may be available. *See Oklahoma Tax Comm'n v. Smith,* 1980 OK 74, 610 P.2d 794. The nonmonetary relief sought by the Counties in this case is authorized by Oklahoma's declaratory judgment law, Title 12 O.S.2011 §§ 1651 to 1657. "A determination of rights, status, or other legal relations may be obtained by means of a pleading seeking that relief alone or as incident to or part of a petition, counterclaim, or other pleading seeking other relief...." 12 O.S.2011 § 1652.

¶ 20 The proof required for the Counties' to establish their right to pursue declaratory relief is set out in *Gordon v. Followell,* 1964 OK 74, ¶ 8, 391 P.2d 242, 245:

The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows:

(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

Here, the Counties are entitled to $0.2275 of each $0.75 in documentary stamps sold.

 The exemptions claimed with respect to the conveyances at issue in this case deprive the Counties of the documentary tax related to the transactions involved in this appeal. And, a determination that the Defendants are claiming the exemptions in violation of the DSTA is likely to result in the Counties' receipt of the taxes for which they filed this case. "A violation of a state statute is an injury to the State and its citizens. A continuing violation is an irreparable injury for which injunctive relief is available." *Glass*, ¶ 10, 639 P.2d at 1237. We agree with the Counties; they have a "legally cognizable" interest in the outcome of this litigation and have established their standing to pursue declaratory relief. "If standing exists, the case must proceed on the merits." *Id.*[5]

## III.

## THE DOCUMENTARY STAMP TAX ACT

¶ 21 The judgments in the foreclosure cases establish that Chase was the holder of the promissory note and mortgage in each of the four foreclosure proceedings or a person entitled to enforce those instruments. Therefore, it is clear that if the sheriff's deeds in each case had conveyed the property to Chase, Chase would have been entitled to the mortgage foreclosure exemption and no documentary taxes would be due. "The tax imposed by Section 3201 of this title shall not apply to: ... Any deed executed pursuant to a foreclosure proceeding in which the grantee is the holder of a mortgage on the property being foreclosed...." 68 O.S.2011 § 3202(13). The Counties do not argue otherwise. Their claim to documentary taxes is based on the fact that the sheriff's deeds were not granted to Chase but to its corporate subsidiary, Homesales, or in the case of the Gentry property to Chase's principal, FNMA. To prove that documentary taxes are due as a result of these conveyances, the Counties must first show that the properties were "sold," which requires proof that there was a "transfer of an interest for a valuable consideration." 68 O.S.2011 § 3201(C)(1). Second, the Counties must prove that the sales are not exempt. Our disposition of the first issue makes consideration of the second unnecessary.

¶ 22 *Jim Walter Homes, Inc. v. County Clerk of Okfuskee County,* 1986 OK CIV APP 35, 734 P.2d 849 (approved for publication by the Supreme Court), cited by the district court, addressed similar issues.[6] The Court of Appeals held that a homebuilder's exchange of a foreclosure judgment for a sheriff's deed at the confirmation hearing constituted "consideration," therefore a sale of the property occurred that was not exempt from documentary tax. As authority for its holding regarding the exchange of consideration, the Court cited *Railroad Federal Sav. & Loan Ass'n v. United States,* 135 F.2d 290 (2d Cir.1943). That case held that a mortgagor's waiver of the right to pursue a deficiency constituted consideration for a deed in lieu of foreclosure and was subject to documentary tax. The Court of Appeals noted that

5. As Chase points out, the Oklahoma Tax Code provides an administrative remedy for it to resolve this tax issue that is bypassed by the Counties' prosecution of this case. Nonetheless, this Court has recognized that in limited circumstances, exhaustion of the OTC's administrative process is not always required. *See, e.g., Glass, Oklahoma Tax Comm'n v. Smith.*

6. The documentary tax statutes applied in *Jim Walter Homes* were renumbered by Laws 1988,

ch. 162, § 160, eff. Jan. 1, 1992: Laws 1991, ch. 338, § 2, eff. Jan. 1, 1992, and are essentially identical to the DSTA statutes at issue in this case with two exceptions: the addition of a definition of "consideration" to section 3201 and the expansion of the mortgage foreclosure deed exemption in section 3202(13) to included "holders" of the mortgage in addition to "original grantors."

reliance on federal case law was appropriate because Oklahoma's documentary tax statutes "were taken from long-standing federal statutes ... [and] there are numerous cases which have interpreted 26 U.S.C. § 4361, which contains the exact language of our statute." *Jim Walter Homes,* 1986 OK CIV APP 35, ¶ 8, 734 P.2d at 851. Although the federal statute at issue in *Railroad Federal* is identical to section 3201(A), the tax on the transaction was imposed pursuant to a United States Treasury regulation providing that a conveyance by a defaulting mortgagee in consideration for cancellation of the debt is taxed based on the amount of the debt plus accrued interest. As Judge Learned Hand's dissent in *Railroad Federal* points out, the effect of the regulation was to tax not only the value of any equity paid to the mortgagee but also the remaining amount of the debt without deducting the value of the land for which the mortgagor had originally loaned the purchase price. *Railroad Federal,* 135 F.2d at 293 (Hand, J. dissenting). Deeds in lieu of foreclosure are now exempt from documentary taxes in Oklahoma. 68 O.S.2011 § 3202(13).

¶ 23 Closer to the analysis required to resolve this case is *Berkeley Sav. & Loan Ass'n of Newark N.J. v. United States,* 301 F.Supp. 22 (D.C.N.J.1969), also interpreting the Federal Documentary Stamp Tax Act. In *Berkeley,* the savings and loan argued that a conveyance from the Veterans Administration (VA) of legal title to property securing repayment of installment contracts it purchased from the VA did not trigger the federal documentary tax imposed on deeds by which real property is sold because the installment contracts required the savings and loan to convey that title to the equitable owner, the installment contract obligor, after payment of a certain amount of the installment contract balance. The Court agreed.

> [N]ot all deeds, instruments, or writing[s] conveying land or other realty are to have stamps affixed to them; only those deeds, instruments, or writings conveying land or other realty sold need have stamps affixed. Necessary, then, is an examination of the transaction being considered to see if there is a sale of realty; whether or not there is a sale depends, in the court's view, on whether or not the transfer of title was for consideration, and on the intention of the parties and the purpose for which the 'purchasing' party desires the property.

*Berkeley,* 301 F.Supp. at 25. *Cf., United States v. Niagara Hudson Power Corp.,* 53 F.Supp. 796, 801 (S.D.N.Y.1944) (transfer of legal title from one wholly owned subsidiary corporation to another wholly owned subsidiary as the result of a merger of the two subsidiary corporations did not require federal documentary stamp taxes). Like the *Jim Walter Homes* Court, we find these federal cases helpful in determining when a sale occurs for purposes of documentary taxes.

¶ 24 However, there are two reasons why *Jim Walter Homes* does not resolve the issues in this case. First, the taxable transaction in *Jim Walter Homes* was based on the sheriff's deed to the homebuilder. According to the Counties, the potentially taxable transaction in this case is not between the sheriff and deed grantee, Homesales or Gentry, but between the entity entitled to receive a tax exempt sheriff's deed, Chase, and the entity that was granted the deed, its wholly owned subsidiary, Homesales, or in the case of the Gentry property, Chase's principal, FNMA. Second, the Court of Appeals holding that exchange of a foreclosure judgment for the sheriff's deed constitutes consideration for a taxable sale cannot be extended to this case. Although the definition of "sold" in the version of the DSTA applied in *Jim Walter Homes* is identical to the definition in section 3201, the Court of Appeals did not address the meaning of the statutory definition of "consideration" added in 1983 and now part of the current version of the DSTA.

> "Consideration" means the actual pecuniary value exchanged or paid or to be exchanged or paid in the future, exclusive of interest, whether in money or otherwise, for the transfer or conveyance of an interest of realty, including any assumed indebtedness.

68 O.S. Supp.1983 § 5101(C)(3), renumbered from § 5101 by Laws 1988, ch. 162, § 160.

¶ 25 This Court has not previously determined what constitutes "consideration" and a

sale of real property for purposes of the DSTA. We have, however, interpreted other provisions of the Oklahoma Tax Code involving taxes on transfers of real property. In the case of *In re Assessments for the Year 2005 of Certain Real Property*, 2007 OK 25, 161 P.3d 303, this Court held that a quit claim deed by trust beneficiaries as co-trustees to a limited liability company of which they were the only members transferred legal title only and, therefore, did not constitute a transfer requiring an assessment of the property at its current value for purposes of ad valorem taxes pursuant to Okla. Const. art. 10, § 8(B): "When only legal title is transferred but the equitable ownership is in the same two persons both before and after a deed is executed concerning the property we do not believe the intent of [section 8(B) was to lift] the five percent (5%) fair cash value cap." *Id.* ¶ 13, 161 P.3d at 311. The Court noted that holding was consistent with previous decisions involving related tax issues, citing *Bowls v. Oklahoma City*, 1909 OK 149, 24 Okla. 579, 104 P. 902 (holder of the equitable title to land pursuant to an executory contract of sale is the owner for the purpose of taxation); *State ex rel. Cartwright v. Dunbar*, 1980 OK 15, 618 P.2d 900 (ownership of property rather than legal title determines the applicability of the constitutional exemption from *ad valorem* taxes for property of the state). Accord, *In re Assessments for the Year 2003 of Certain Properties*, 2006 OK CIV APP 147, 150 P.3d 399 (deed from one limited liability company to another to obtain refinancing did not constitute a transfer triggering *ad valorem* assessment at current value where both LLC's were owned and controlled by the same third LLC).

¶ 26 This Court's focus on the substantive nature of the underlying transaction has been followed by the OTC in its administra-tion and enforcement of the DSTA as well. In Documentary Stamp Tax, P–92–222, 1995 WL 557131 (Okla. Tax Comm'n 1995), the OTC found that a quit claim deed granted by a former husband to effectuate the terms of a divorce decree awarding property to his former wife was not a sale as defined in 68 O.S.1991 § 3201(B) because it conveyed no interest beyond the wife's beneficial ownership already established by the divorce decree. A similar result was reached in 1994 interpreting the definition of "sold" in the 1985 version of the documentary tax statutes. *See* Documentary Stamp Tax, P 9200060, 1994 WL 848080 (Okla. Tax Comm'n Jan. 6, 1994). In Documentary Stamp Tax, P 8800313, 1989 WL 251450 (Okla. Tax Comm'n Sept. 28, 1989), a partnership owned by family members transferred real property to the individuals at the request of their lender and in order to obtain refinancing. After the refinancing was obtained the members transferred the properties back to the partnership. The OTC concluded no sale occurred because no consideration was exchanged, the intent of the transfers was to effectuate the purpose of the partnership not to conclude a sale, therefore, the partnership did not purchase the properties and no documentary tax was due. The OTC relied on *Berkeley Savings & Loan, supra*, to reach that result. Finally, by rule, the OTC has determined that conveyances "from a constituent corporation to the new or continuing corporation" as the result of a merger or consolidation are exempt from documentary taxes. Okla. Admin. Code § 710:30–1–9(7).[7]

¶ 27 An interest in real property is "sold" for purposes of the DSTA if the grantee of a "deed, instrument, or writing" pays "actual pecuniary value" for the conveyance. 68 O.S. 2011 § 3201. If that consideration is paid,

---

7. Other state courts construing similar or identical definitions of "consideration" in documentary tax statutes have reached the same result. *Crescent Miami Ctr., LLC v. Florida Dep't of Revenue*, 903 So.2d 913 (Fla.2005) (grantor's wholly owned limited liability company was not "purchaser" for purposes of documentary tax regarding transfer of real property where no consideration was exchanged and beneficial ownership was not changed); *ZIRP–IC, LLC v. Hennepin County*, Nos. 31282, 04–02759, 2005 WL 937432 (Minn. Tax Ct. Regular Div. April 21, 2005) (no documentary tax due on deed in lieu of foreclosure because the value of the property was less than the mortgage balance, therefore the consideration for the transfer, a negative number, did not exceed the statutory minimum for imposing documentary tax); Real Estate Transfers–Documentary Tax, TAM–88–15, 1988 WL 232627 (S.C.Tax.Comm'n) (deed conveying real property from one corporation to another corporation not subject to documentary tax where both corporations were owned by the same individual and no consideration was paid).

documentary taxes are due on the conveyance unless otherwise exempt. In the absence of such consideration, the transfer of legal title alone is not taxable. In determining whether "actual pecuniary value" is paid in the foreclosure context, we note that a sheriff's sale "seldom brings a property's fair market value. The predictable built-in loss is the difference between the fair market value of the property and the foreclosure sale proceeds." *Founders Bank & Trust Co. v. Upsher*, 1992 OK 35, ¶ 12, n. 23, 830 P.2d 1355, 1362. If that difference is $100 or less, there can be no sale for documentary tax purposes. 68 O.S.2011 § 3201(A). As stated by the OTC in its Rule 9, a conveyance of real property "without consideration" is not subject to documentary taxes. Okla. Admin. Code § 710:30–1–9(1).

## IV.

## THE COUNTIES ARE NOT ENTITLED TO JUDGMENT

¶ 28 Consequently, evidence that the consideration for the conveyances at issue in this case exceeded $100 is essential to the Counties' claim that the properties were "sold" and that documentary taxes are due. Therefore, the fact that Homesales and FNMA were granted deeds in these foreclosure proceedings does not resolve the documentary tax issue. Nor is that issue resolved by the fact that certain post-foreclosure conveyances were made in the Gentry case. Further examination of each transaction is required to determine whether the interest conveyed was "sold" for purposes of the DSTA. Without proof that a sale occurred, the Counties cannot demonstrate, in the first instance, that documentary taxes were due and that they are entitled to judgment. If the moving party has not addressed all material facts, or if one or more of such facts is not supported by acceptable evidentiary material, summary judgment is not proper. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

### A. The Homesales Deeds

¶ 29 In three of the foreclosure cases, Chase assigned its interest to Homesales during the confirmation hearings. The order confirming the sheriff's sale in each of those cases recites that Chase "in open court acknowledged receipt from Homesales, Inc. of good and valuable consideration...." The summary judgment record shows that Homesales was a wholly owned subsidiary of Chase at the time of the transfer. The record does not show the amount of the "good and valuable consideration" exchanged between the parent corporation and its subsidiary. Because there is nothing in the summary judgment record to show whether the consideration paid by Homesales exceeded the statutory minimum, the district court could not, and we cannot determine whether the property involved in these transactions was "sold" for purposes of section 3201(A) of the DSTA.

> An appellate court cannot take notice of any document or evidentiary material which the trial court did not have.... In addition, it is not the duty of the appellate court on review to make first instance determinations of disputed law or fact issues.

*Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587 (citations omitted). Because the Counties have not established that the properties conveyed to Homesales were "sold," they have not shown that documentary taxes are due and that they are entitled to judgment with respect to these conveyances.

### B. The FNMA Deed

¶ 30 Based on the documents in the summary judgment record, Chase is entitled to the inference that FNMA purchased the Gentry loan from the loan originator, Irwin Mortgage Corporation, that Chase acquired the rights to service this loan from FNMA and that Chase acted as FNMA's agent in the foreclosure action. At the confirmation hearing in the Gentry foreclosure, Chase also assigned its interest in the property to FNMA "for good and valuable considerations [sic]." However, the summary judgment record regarding the Chase/

FNMA transaction suffers from the same defect discussed with respect to the Home-sales deeds. The Counties have failed to show that FNMA paid Chase more than $100 for this conveyance. Further, according to OTC Rule 9, a conveyance from an agent to its principal "conveying realty purchased for and with funds of the principal" is not subject to documentary tax. Okla. Admin. Code § 710:30–1–9(3).

It is a well settled rule that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, while not controlling, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous.

*Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 1985 OK 97, ¶ 10, 714 P.2d 1013, 1015 (citing *McCain v. State Election Bd.*, 1930 OK 323, 144 Okla. 85, 289 P. 759). This Court followed that well-settled rule in *Johnston v. Oklahoma Tax Comm'n, supra*, adopting the OTC's practice of calculating documentary taxes on the cash paid plus the amount of any purchase money mortgage granted as consideration for a conveyance of real property. And, we do so again here with respect to the OTC's Rule regarding conveyances between agents and principals. The Counties have failed to show that the Gentry property was not purchased with FNMA's money and that Chase did not assign its interest at the confirmation hearing as agent for its principle, FNMA. Consequently, the Counties are not entitled to judgment based on the Chase/FNMA transaction.

## C. The Gentry Deeds

¶ 31 Subsequent to taking title to the Gentry property, FNMA executed a Special Warranty Deed transferring the property to Homesales. Homesales then executed a Quit Claim Deed conveying the property to Irwin Mortgage. Both of these deeds recite that the consideration was "TEN Dollars ($10.00) and other good and valuable consideration." The deeds also state that the transactions are exempt from documentary taxes pursuant to Title 68 O.S. § 3202(3): "Deeds which without additional consideration, confirm, correct, modify or supplement a deed previously recorded." Chase argues that Homesales acted as an intermediary to facilitate a repurchase of the Gentry loan by Irwin Mortgage pursuant to a preexisting agreement with FNMA. *Cf., Berkeley*, 301 F.Supp. 22, (regarding obligation to repurchase loan in case of default as reflecting the parties' intent not to affect a sale). That agreement, however, is not in the record. More importantly, the summary judgment record does not show the amount of the "other good and valuable consideration" paid for these conveyances. In the absence of that evidence, the Counties have failed to address all material facts necessary to establish their right to judgment based on the special Warranty Deed and Quit Claim Deed.

## CONCLUSION

¶ 32 Although the Counties are not authorized to prosecute violations of the Documentary Stamp Tax Act, they do have standing to challenge the exemptions from documentary taxes claimed in this case. However, because the Counties have failed to prove that consideration in excess of $100 was paid for any of the conveyances the district court found were taxable, they have failed to prove that any of the properties subject to those conveyances was "sold" for purposes of section 3201 of the Documentary Stamp Tax Act. Absent proof that a sale occurred, the Counties are not entitled to judgment. Because the Counties have failed to prove that a sale occurred, we do not address the validity of any exemption claimed with respect to the conveyances at issue in this case.[8] The

---

8. We also do not address Chase's argument, raised for the first time in this appeal, that the Counties' attempt to collect documentary taxes is barred by the applicable statute of limitations. Generally, this Court does not reach issues the appealing party fails to raise in the trial court and we decline to do so here. *Bottles v. State ex rel. Oklahoma State Bd. of Med. Licensure and Supervision*, 1996 OK 59, ¶ 4, 917 P.2d 471, 472. *See also, Jackson v. Jackson*, 2002 OK 25, ¶ 12, n. 12, 45 P.3d 418, 425. But, we do so without prejudice to Chase's assertion of this argument in the district court on remand.

interlocutory order appealed is reversed and this case is remanded for further proceedings consistent with this Opinion.

**CERTIORARI PREVIOUSLY GRANTED; CERTIFIED INTERLOCUTORY ORDER OF THE DISTRICT COURT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

¶ 33 REIF, V.C.J., WATT, EDMONDSON, GURICH, and FISCHER, S.J., concur.

¶ 34 KAUGER, J., concurs in part; dissents in part.

¶ 35 WINCHESTER, TAYLOR, and COMBS (by separate writing), JJ., dissent.

¶ 36 COLBERT, C.J., recused.

COMBS, J., with whom TAYLOR, J., joins, dissenting.

¶ 1 In this cause concerning alleged violations of the Documentary Stamp Tax Act (DSTA), 68 O.S.2011 §§ 3201–3206, the majority determines that although the plaintiffs do not have authority to enforce the provisions of the DSTA, the plaintiffs have standing to seek declaratory relief under Oklahoma's declaratory judgment statute, 12 O.S. 2011 §§ 1651–1657. Because I disagree with the majority's assertion that the plaintiffs possess standing in this cause, I respectfully dissent.

### I.

**The Plaintiffs Do Not Have Standing Because Their Injury Cannot be Redressed by a Favorable Court Decision.**

¶ 2 The question of whether a party possesses standing has traditionally been formulated by this Court as whether a party has sufficient interest in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Indep. School Dist. No. 5 of Tulsa v. Spry*, 2012 OK 98, ¶ 2, 292 P.3d 19; *Estate of Doan v. First Nat'l Bank and Trust Co. of Tulsa*, 1986 OK 15, ¶ 7, 727 P.2d 574; *Indep. School Dist. No. 9 of Tulsa County v. Glass*, 1982 OK 2, ¶ 8, 639 P.2d 1233. At a minimum, standing is composed of three elements, which are: 1) a legally

protected interest which must have been injured in fact, *i.e.*, an injury which is actual, concrete and not conjectural in nature; 2) a causal nexus between the injury and the complained of conduct; and 3) **a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable court decision.** *J.P. Morgan Chase Bank, Nat'l Assoc. v. Eldridge*, 2012 OK 24, ¶ 7, 273 P.3d 62; *Cities Service Co. v. Gulf Oil Corp.*, 1999 OK 16, ¶ 3, 976 P.2d 545. This Court has also phrased the standing requirement in other terms, noting that:

> A party whose standing is challenged must show (1) actual or threatened injury, (2) **for which relief can be given,** and (3) the interest to be protected is "within a statutorily or constitutionally protected zone".
>
> *Oklahoma Public Employees Ass'n v. Oklahoma Dept. of Central Services*, 2002 OK 71, ¶ 16, 55 P.3d 1072 (quoting *In Re Initiative Petition No. 363*, 1996 OK 122, ¶ 13 n. 29, 927 P.2d 558).

¶ 3 I do not dispute that the plaintiffs have alleged sufficient injury to a protected interest and a causal nexus to the defendants' conduct exists to satisfy the first and second required elements of standing. The loss of revenue to the plaintiffs due under 68 O.S 2011 § 3204 and caused by defendants' claimed exemptions from the purchase of documentary stamps results in actual, pecuniary harm. However, I do not believe that the plaintiffs have demonstrated the third requirement: redressability.

¶ 4 The specific harm to the plaintiffs is pecuniary. Due to the actions of the defendants, the plaintiffs are not getting the share of revenue from the sale of documentary stamps they believe they are owed pursuant to the DSTA, 68 O.S.2011 § 3204, because the defendants allegedly wrongly claimed an exemption. As the majority's opinion states, the plaintiffs "filed this suit to enforce section 3201 and collect the documentary taxes they contend are due." Majority Opinion, at ¶ 8.

¶ 5 However, the first section of the majority's opinion is dedicated to a discussion of why the plaintiffs are not entitled to enforce the provisions of the DSTA, because the authority to do so lies with the Oklahoma

Tax Commission. The majority lists several reasons justifying its position, including: 1) state policy provides for uniform procedures and remedies with respect to all state taxes; 2) the plaintiffs' position on enforcement conflicts with the Legislature's general statutory procedure for collecting unpaid taxes; and 3) rules promulgated by the Oklahoma Tax Commission confirm that the plaintiffs lack direct enforcement authority. The majority concludes: "[w]e will not read into the DSTA authority for the Counties to prosecute violations of the Act when the Legislature has declined to do so." Majority Opinion, at ¶ 15.

¶ 6 Fundamentally, an assessment of standing is not a decision on the case's merits. Rather, it is a determination whether the plaintiff is the proper party to seek adjudication of the asserted issue. *Gulf Oil. Corp.*, 1999 OK 16, ¶ 5, 976 P.2d 545; *Toxic Waste Impact Group v. Leavitt*, 1994 OK 148, ¶ 9, 890 P.2d 906. The asserted issues in this cause are whether taxes are due pursuant to the DSTA and whether exemptions from those taxes were validly claimed. Based on the majority's analysis in part one of its opinion, the plaintiffs are *not* the proper party to seek adjudication of these issues. The proper parties to enforce the tax statutes are the Oklahoma Tax Commission (Title 68 O.S.2011 §§ 221 to 230) and the Attorney General (Title 68 O.S.2011 § 250).

## II.

**This Cause is Distinguishable from *Independent School Dist. No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233.**

¶ 7 The majority asserts that the plaintiffs inability to sue to enforce the DSTA, and hence, their inability to receive the monetary relief they desire by doing so, does not defeat their standing to seek some other form of relief. Specifically, the majority likens this cause to *Indep. School Dist. No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233. In *Glass*, a school district challenged a refund payable as the result of a tax exemption claimed by a taxpayer whose taxable personal property was located in the district. 1982 OK 2, ¶¶ 1–3, 639 P.2d 1233. The school district sought a temporary and permanent injunction to prevent payment of the refund

to the taxpayer, after the refund request was granted by the Tulsa County Board of Tax-Roll Corrections. *Glass*, 1982 OK 2, ¶ 6, 639 P.2d 1233. The taxpayer argued that the school district lacked standing to sue, as 68 O.S. Supp.1974 § 2479 authorized only the taxpayer and the County Assessor to seek review of the Board's decision. *Glass*, 1982 OK 2, ¶ 8, 639 P.2d 1233.

¶ 8 This Court determined that the school district possessed standing to seek an injunction to protect the wrongful disposition of its revenues, though in the end the Court also determined the school district was not entitled to an injunction. *Glass*, 1982 OK 2, ¶ 11, 639 P.2d 1233. The majority in this cause asserts that *Glass* supports the position that the plaintiffs have standing, if not to enforce the DSTA, then to seek some other form of relief. However, *Glass* is distinguishable from the instant cause in more than one respect.

¶ 9 First, the school district in *Glass* never sought a statutory remedy it was not entitled to invoke. Rather, the school district in *Glass* prevailed on the question of standing because it sought equitable relief in the form of an injunction. This Court specifically stated that had the school district attempted to invoke 68 O.S. Supp.1974 § 2479, the taxpayer's position that the district did not have standing would have merit. This Court stated:

> **Ford contends that the School District lacks standing** to enjoin the refund because 68 O.S.Supp.1974 § 2479 authorizes only the taxpayer and the County Assessor to seek review of the Board's decision. **Ford's position would be tenable if the District sought to avail itself of the statutory remedy of a trial de novo.** The issue is not under-assessment or non-assessment. The District is not appealing the decision of the Board, nor is it seeking a trial de novo. Rather, it seeks to prevent what it characterizes as an illegal refund of public funds which has been erroneously authorized by the Board.

*Glass*, 1982 OK 2, ¶ 8, 639 P.2d 1233 (footnotes omitted) (emphasis added).

¶ 10 Second, the equitable remedy sought by the school district in *Glass* would have been fully sufficient to remedy the injury it suffered. By granting the school district's request for an injunction to prevent the illegal payout of a refund, the court would have been able to prevent the loss of revenue to which the school district claimed it was entitled. It is here that redressability is an issue: "[i]t is not necessary to decide whether a litigant will ultimately be entitled to any relief in order to hold that the party has standing to seek judicial redress for his/her grievance" **but** the relief being sought must, if granted, be capable of remedying the injury. *Glass*, 1982 OK 2, ¶ 10, 639 P.2d 1233. In this cause, the plaintiffs have not sought injunctive relief but instead seek enforcement of the DSTA in order to obtain the revenue to which they claim they are entitled.

### III.

**Because the Plaintiffs Cannot Sue to Enforce the DSTA, They Cannot Pursue a Declaratory Judgment that Serves No Purpose Other than to Further That Goal.**

¶ 11 Having determined in this cause that the plaintiffs do not have authority to sue to enforce the provisions of the DSTA, the majority circumvents the problem of redressability by determining that the plaintiffs have standing to seek non-monetary relief pursuant to Oklahoma's declaratory judgment statute, 12 O.S.2011 §§ 1651–1657, noting that when statutory relief is inadequate, equitable relief may be available.

¶ 12 Title 12 O.S.2011 § 1651 sets the parameters for the issuance of declaratory judgments in Oklahoma, and provides:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall

be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

A declaratory judgment is merely a type of remedy, not an independent cause of action, and it does not extend the jurisdiction of a court where it would not otherwise exist. *Conoco, Inc. v. State Dept. of Health of State of OK*, 1982 OK 94, ¶ 18, 651 P.2d 125. Specifically, this Court stated in *Conoco, Inc.*:

Such relief [a declaratory judgment] is especially useful in a case where a justiciable controversy between the parties exists and the plaintiff would be required to do or refrain from doing some action at his legal peril. It is merely a type of *remedy* which may be granted where a court already has jurisdiction over a particular cause. It cannot extend the jurisdiction of a court where it would not exist otherwise; and if a court lacks jurisdiction over a case, it cannot enter any rightful judgment.

*Conoco, Inc.*, 1982 OK 94, ¶ 18, 651 P.2d 125.

Declaratory actions are meant to supplement rather than supersede other types of litigation. Restatement (Second) of Judgments § 33, comment C (1981).

¶ 13 This Court has long relied upon the axiom that what may not be done directly should not be allowed to be done indirectly. *In Re Oklahoma Capitol Imp. Authority*, 2012 OK 99, ¶ 12, 289 P.3d 1277; *Large v. Acme Engineering and Mfg. Corp.*, 1990 OK 34, ¶ 8, 790 P.2d 1086; *Reherman v. Oklahoma Water Resources Bd.*, 1984 OK 12, ¶ 15, 679 P.2d 1296. A determination by this Court that the plaintiffs can seek a declaratory judgment that documentary stamp taxes are due from the defendants pursuant to 68 O.S. § 3201 and that the exemptions claimed

by the defendants were unlawful is nothing more than an end-run around the basic determination that the plaintiffs are not permitted to sue to enforce the DSTA. **Having determined that the plaintiffs cannot enforce the DSTA, it does not make sense to allow them to seek declaratory relief that could lead to nothing else but subsequent action by the plaintiffs to enforce the DSTA.**

¶ 14 Declaratory relief serves no purpose other than to aid the plaintiffs in their quest to redress their original harm caused by alleged violations of the DSTA. Since the plaintiffs cannot sue to enforce the DSTA, a declaratory judgment that the DSTA has in fact been violated by the defendants does not help the plaintiffs.[1] Further, 12 O.S.2011 § 1651 specifically indicates that a court may refuse to issue a declaratory judgment where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

¶ 15 Pursuant to the majority opinion, the plaintiffs will not be permitted to enforce the DSTA even if they received a declaratory judgment that the DSTA was violated by the defendants. This leads back to the redressability of the underlying harm giving rise to the plaintiffs cause: there is no likelihood that the plaintiffs' injury (their loss of revenue) will be redressed by a favorable court decision; there is only speculation. *See J.P.*

*Morgan Chase Bank, Nat'l Assoc. v. Eldridge,* 2012 OK 24, ¶ 7, 273 P.3d 62; *Cities Service Co. v. Gulf Oil Corp.,* 1999 OK 16, ¶ 3, 976 P.2d 545.

¶ 16 Because the plaintiffs' harm is not redressable through declaratory relief or otherwise, they do not have standing to sue to enforce the DSTA, and they do not have standing to seek a declaratory judgment the only purpose of which is to further that end. The majority opinion would remand this cause back to the district court for a determination on the merits of the applicability of the DSTA, placing a heavy evidentiary burden on the plaintiffs to prove that the properties in question were sold within the meaning of 68 O.S.2011 § 3201. The resulting further litigation and expense is unnecessary and should be avoided, because the plaintiffs cannot attain the relief they seek. Because the plaintiffs lack standing to enforce the DSTA and lack standing to seek a declaratory judgment in furtherance of that end, it is not necessary to address the merits of the controversy. For this reason, I respectfully dissent.

---

1. Declaratory relief might be beneficial to the Oklahoma Tax Commission, but the Commission has never been made a party to this litigation.